Mr. Chief Justice Waite
delivered the opinion of the court.
The facts found below present the following case:
In October, 1864, the chief commissary of subsistence for the military department of New Mexico advertised that he would receive proposals at his office in Santa Fé until January 2,1865, for the delivery of 1,000,000 pounds of corn at Fort Sumner in three installments, to wit: 500,000 pounds not later than May 31, 250,000 pounds not later than June 30, and 250,000 pounds not later than July 15. Dold, the appellant, then being at Las Vegas, N. Mex., was the successful bidder. He was notified January 15, and on the 30th C. W. Kitchen wrote the commissary from Las Vegas as follows: “ My corn train is now close at hand. Would you have the kindness, if convenient, to authorize the acting commissary of subsistence at Fort Sumner to receive corn on Andres Dold’s contract í I will have about 85,000 pounds, I think, which I will get an order from Mr. Dold to turn in on his contract.” On the 5th February, the commissary replied that he could not give an order to Dold to deliver *580 or to tbe acting commissary to receive, until the contracts were signed, and approved by the general commanding. On the same day the commissary forwarded the contract from his office to the commanding general for approval. On the next day, the 0th, he wrote Kitchen, who was one of the sureties for Dold on the contract, as follows:
“I am just in the receipt of the contract signed by Andres Dold and securities. Tour proposition on behalf of Andres Dold to deliver 85,000 pounds which you now have on hand on his (Dold’s) contract is accepted. You will proceed to deliver it without delay. The acting commissary of subsistence at Fort Sumner will be directed to receive it.”
After this, February 18, Kitchen delivered to the officers of the commissary department at Fort Sumner 28,747 pounds, and, February 24, 34,580 pounds, for which the chief commissary forwarded to the commanding general, March 24, accounts or vouchers in the name of Dold, for his approval. In a communication accompanying the accounts, he wrote as follows:
“ This corn, delivered on the contract of Mr. Dold, was, as I was made to understand from a statement made to me by Mr. Dold, brought from the States by Mr. C. W. Kitchen, and was en route from the States before the contract was given. Mr. Kitchen himself told me when the bids were opened in my office, that his train from the States with corn was within striking distance, which would account for the early delivery.”
The commanding general, however, disapproved the vouchers, and directed that the delivery be not accepted under the contract. The corn was actually used in the public service, and, in March, reported by the commissary who made the purchase to the Commissary General of Subsistence of the Army as purchased from Dold at the lowest market rates, not paid for, but certified accounts given. The price stated in the report was that fixed by Dold’s contract.
No deliveries were made by Dold until July 16, when he delivered 407,561 pounds. On the 22d July, the commanding general, from his headquarters at Santa Fé, through the chief commissary at the same post, communicated to Kitchen the fact that he withheld -his approval of the accounts for his deliveries, and at the same time proposed to pay him for the corn at the price it coud have been purchased for at the time of delivery in the open market. On the 23d, a voucher for this corn was made out in the name of Kitchen “ as purchased in open market b3 order of the department commander” at 16.37 cents per pound, *581 and Kitchen was paid at that rate, he receipting therefor “ as in Ml of the above account.” On the same day Dold addressed a letter to the chief commissary, in which he said he had just received information that the Kitchen delivery would not be accepted on his contract, and concluding as follows: '
“ Having made my arrangements for the delivery of the million of pounds of corn,, including the 63,327 pounds, if I am required now to deliver the million of pounds exclusive of the 63,327 pounds referred to, I most respectfully ask for an extension of time for the delivery of said amount until some time in the coming fall.”
On the 29th July this request was acceded to and the time extended to November 15.
On the 25th and 31st July deliveries were made by Dold sufficient to complete the first installment under the contract. The second installment was filled between July 31 and August 28, and between August 21 and December 30 240,545 pounds were turned in on account of the third installment. There was no further delivery, and for such as were made Dold was paid in full according to the contract.
When Kitchen was paid upon the vouchers in his favor, July 23, it was understood that an appeal might be made to the War Department for the difference between the amount paid and the contract price. An appeal to that effect was prosecuted April 8, 1866, but without success.
This suit was commenced February 16,1871, to recover such difference, and judgment having been rendered in favor of the United States, Dold appealed.
A bare statement of the case seems to us sufficient to show that the judgment below was right. It is not pretended that Dold owned the corn delivered by Kitchen, or that he has been in any maimer injured by the refusal of the commanding general to receive it under the contract. If this were a suit against him to recover damages for not delivering, and he were defending because of the tender by Kitchen, the question would be whether that was such an offer to perform on his part as would excuse him from liability for a failure to deliver to that extent.
But instead of being such a suit, it is one to recover for a delivery actually made under the contract. To this the government answers:
“ The corn for which you now claim was not accepted as a delivery under the contract. You were so informed at the time, *582 and, acquiescing in tbe decision, asked further time to complete your performance. This was granted. Tour other deliveries have been made and accepted and you have been paid in full. Kitchen, who actually owned the. corn not accepted, has been paid for it at the market price upon a voucher in his name. He cannot claim under the contract, for he was no party to it; and you cannot complain, because, acquiescing in the refusal to accept his corn, you have performed your contract in another way and been paid in full.”
It seems to us this answer is conclusive. We need not consider any question arising upon the exclusion of Kitchen as a witness, which the appellant has attempted to put into the record; for had his testimony all been admitted, the result must have been the same. Hold did not stand on his rights under the tender of Kitchen’s delivery and refuse to yield to the decision made against him, but went on and fulfilled his contract in accordance with the claim of the government as to his obligation, and now, apparently for Kitchen’s benefit alone, seeks to compel the government to pay for Kitchen’s corn at the contract price instead of the market rates.
Judgment affirmed.